OfUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUIS CABAN,

                    Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                        14-CV-613S

ADAM BLANAR, GLORIA L. BARLOW HARPER,
TERRENCE C. McCANN, JAMES R. MYERS,
and JONATHAN KRUGER,

                    Defendants.

## I. INTRODUCTION

In this action, pro se plaintiff Luis Caban alleges, pursuant to 42 U.S.C. § 1983, that

Defendants violated his Eighth Amendment right to be free from cruel and unusual

punishment (excessive force) and his First and Fourteenth Amendment rights (due process

and equal protection) while he was an inmate in the custody of the New York Department

of Corrections and Community Services ("DOCCS").   Presently before this Court is

Defendants' motion to dismiss Caban's second and third causes of action.   (Docket No.

6.)  For the following reasons, Defendants' motion is granted, and Caban will be permitted

to file an amended complaint.

## II. BACKGROUND

The following facts, drawn from Caban's complaint and the exhibits attached

thereto, are assumed true for purposes of Defendants' motion to dismiss.

At all times relevant, Caban was an inmate at the Wende Correctional Facility.[1]

---

[1]Caban is now at Southport Correctional Facility.  (Complaint, p. 1.)

1

(Complaint, Docket No. 1, Exhibit 2, p. 14 of 32.[2]) Defendants are all correctional officers at Wende. (Complaint, pp. 2–3.)

On March 22, 2012, Caban was returning from commissary in a line with several other inmates, including an inmate named "Rogers." (Complaint, p. 6, ¶ 1.) Rogers was walking ahead of Caban. (Complaint, p. 6, ¶ 1.) As the group entered the D-block housing unit, Defendant McCann began striking Rogers with his baton. (Complaint, p. 6, ¶ 1.) Caban tried to grab Rogers "out of care and concern from further abuse." (Complaint, p. 6, ¶ 1.) Caban was then struck in the head and knocked unconscious. (Complaint, p. 6, ¶ 1.)

While Caban was unconscious and handcuffed on the floor, Defendants Blanar, Harper, Myers, and McCann kicked and punched him "all over his head and body." (Complaint, p. 6, ¶ 2.) Defendant Kruger then arrived (apparently while Caban was still unconscious) and forcibly took a baton from one of the other defendants and yelled, "give me this fucking stick, I'm gonna show you how to use it." (Complaint, p. 6, ¶ 3.) Kruger then began hitting Caban and Rogers with the baton "across the head and body area," as Caban and Rogers "folded themselves in a fetal position on the floor."[3] (Complaint, p. 6, ¶ 1.)

Plaintiff awoke in the Wende clinic with injuries all over his body, head, forehead, face, back, shoulders, and wrists. (Complaint, p. 6, ¶ 4.)

After this incident, Defendants issued a fabricated misbehavior report against

---

[2]Citations to the complaint are to the page numbers generated by the CM/ECF system.

[3]Caban makes his allegations about what occurred while he was unconscious "upon information and belief." (Complaint, p. 6, ¶¶ 2–3.) The source for these allegations is not clear from the complaint.

Caban. (Complaint, p. 7, ¶ 5 and Exhibit 3.) After a hearing and finding of guilt on charges that he engaged in violent conduct, created a disturbance, and assaulted staff, Caban received 60 months in the special housing unit; 60 months loss of privileges; and 12 months loss of good time. (Complaint, p. 7, ¶ 7 and Exhibit 3.) Caban's punishment was reduced on appeal to 24 months in the special housing unit (with 12 months suspended); 36 months loss of privileges; and 12 months loss of good time.[4] (Complaint, p. 7, ¶ 8 and Exhibit 5.) Caban also faced criminal charges, but those charges were dismissed. (Complaint, p. 7, ¶ 6 and Exhibit 4.)

## III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Since Caban is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Caban's first claim is that Defendants violated his Eighth Amendment rights by using excessive force against him. (Complaint, p. 7, ¶¶ 10–11, 17.) Defendants do not move against this claim.

---

[4]In the complaint, Caban explicitly "waives any and all claims related to the loss of good time." (Complaint, p. 7, ¶ 9.) In his affirmation in opposition to Defendants' motion, however, Caban states that the language barrier—Caban speaks Spanish—resulted in this mistaken waiver. (Plaintiff's Affirmation in Opposition, Docket No. 11, p. 9.) Instead, Caban states that "in reality what he meant was that it didn't matter that the hearing officer arbitrarily took away his good time because he was sentence[d] to 15 years to life, so that taking good time credit should not apply." (Id. at pp.9-10.) It is unclear what Caban means by this statement, but as is discussed further on, to the extent Caban wishes to amend his complaint to add a claim that his disciplinary proceedings did not comport with his procedural due process rights, he will be granted leave to do so.

Caban's second claim is that Defendants violated his Fourteenth Amendment due process and equal protection rights by fabricating a misbehavior report against him, which resulted in his extended confinement in the special housing unit.  (Complaint, p. 8, ¶¶ 12, 13, 18.)

Caban's third claim is that Defendants violated his First and Fourteenth Amendment rights by retaliating against him for "trying to pull inmate Rogers out of harms way." (Complaint, pp. 8–9, ¶¶ 14, 15, 18.)

Defendants move to dismiss Caban's second and third causes of action for failure to state a claim upon which relief can be granted.

## A.    Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  FED. R. CIV. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

4

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; FED. R. CIV. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In pro se actions, the United States Supreme Court has rejected the idea that the

5

plausibility standard requires amplification with factual allegations to render the claim plausible.  See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). In Erickson, the Supreme Court reversed the dismissal of a prisoner's Eighth Amendment claim, holding that the court of appeals had "depart[ed] from the liberal pleading standards" of Rule 8(a).  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson, 127 S.Ct. at 2200).  Although the Court did not clarify when the plausibility standard requires factual amplification, it noted that "a pro se complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson, 127 S.Ct at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

**B.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Caban's second and third claims are grounded in the First and Fourteenth Amendments.

C.     **Caban's Second Claim**

In his second claim, Caban alleges that Defendants violated his Fourteenth Amendment due process and equal protection rights by placing him in the special housing unit after the filing of a fabricated misbehavior report and criminal charges against him. (Complaint, p. 8, ¶¶ 5–9, 12, 13, 18.)  As presently alleged, this claim must be dismissed.

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

There are two broad categories of due process claims—substantive and procedural. A substantive due process claim is based upon the deprivation of a constitutionally protected life, liberty, or property interest.  See B.D. v. DeBuono, 130 F.  Supp. 2d 401, 431 (S.D.N.Y. 2000).  A procedural due process claim is based upon the deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard. Id. at 432-33.  With respect to any due process claim—substantive or procedural—"[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

"A prisoner's liberty interest is implicated by prison discipline, such as [special housing unit] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).  Confinement under normal conditions in a special housing unit extending beyond 305 days constitutes an atypical and significant

7

hardship requiring procedural due process protections.  See Palmer, 364 F.3d at 65.

In Wolff v. McDonnell, the Supreme Court held that whenever an inmate is subjected to a prison disciplinary proceeding that might result in the deprivation of a liberty interest, prison officials must ensure that certain procedural safeguards are in place.  418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  When an inmate may be subjected to confinement in the special housing unit, he is entitled to the following due process protections: "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken."  Smith v. Fischer, No. 14-3857, 2015 WL 5780510, at *2 (2d Cir. Oct. 5, 2015) (per curiam) (quoting Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004)); see also Wolff, 418 U.S. at 563-71.

As it relates to his due process claim, Caban alleges that he was ultimately sentenced to 12 months (365 days) in the special housing unit, which triggers due process protections.  See Palmer, 264 F.3d at 65.  But Caban does not allege any constitutional failure in the prison disciplinary proceedings.  His only allegation is that Defendants filed false charges against him; he does not allege, for example, any failures in the hearing or appeal procedure itself that resulted in the imposition of his special housing unit confinement.  See Smith, 2015 WL 5780510, at *2.

Prison inmates "have no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); see also Boddie v. Robertson, 105 F.3d 857, 862 (2d Cir. 1997) (noting that "a prison inmate has no general

8

constitutional right to be free from being falsely accused in a misbehavior report"). Thus, because the sole basis for Caban's due process claim is that Defendants filed a false misbehavior report against him, he fails to state a claim upon which relief may be granted. See Crenshaw v. Hartman, 681 F. Supp. 2d 412, 415 (W.D.N.Y. 2010) ("The law is clear that 'the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process.'")(quoting Sital v. Burgio, F. Supp. 2d 355, 357 (W.D.N.Y. 2009)).

Although Caban's current due process claim is subject to dismissal, the Second Circuit has directed that pro se litigants be given the opportunity to amend their complaints at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. See Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). In his opposition to Defendants' motion, Caban refers to his discipline as having been "arbitrarily" imposed. (See Plaintiff's Affirmation in Opposition, Docket No. 11, p. 9.) Construing Caban's submissions broadly, he has at least suggested that the hearing officer was not fair and impartial, which would state a procedural due process claim. See Smith, 2015 WL 5780510, at *2.

Accordingly, this Court will dismiss Caban's second claim (due process), but grant him 45 days in which to file and serve an amended complaint that includes the facts underlying not only his unchallenged first claim (Eighth Amendment), but also any procedural due process claim concerning the disciplinary proceedings, if such a claim exists, including the identification of the proper defendants. Caban is reminded that an amended complaint will completely replace his initial complaint (which is why he must re-assert his first claim) and must comply with the requirements of Rule 15.

9

The equal protection portion of Caban's second claim must also dismissed.  The equal protection clause of the Fourteenth Amendment "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment [is] based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person."  Bizzaro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005).

To state an equal protection claim, an inmate must allege "(1) that he or she has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right."  Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

Nowhere in his complaint does Caban allege that he was treated differently from a similarly situated inmate, nor does he allege that any such difference in treatment was based on a constitutionally impermissible reason.  See Nash, 585 F. Supp. 2d at 462. Caban's equal protection claim must therefore be dismissed.

**D.     Caban's Third Claim**

Caban's third claim is that Defendants violated his First and Fourteenth Amendment due process rights by retaliating against him.  (Complaint, p. 8, ¶¶ 14, 15, 18.)  Caban alleges that "[t]he defendants retaliated on Inmate Rogers because he filed grievances and in turn retaliated on plaintiff for trying to pull Inmate Rogers out of harms way."  (Complaint, p. 8, ¶ 18.)  It is unclear whether the alleged retaliation is Defendants' use of excessive force or the filing of a false misbehavior report, although Caban's response to Defendants' motion suggests it is the latter.  (Plaintiff's Affirmation in Support, Docket No. 11, p. 4 ("The

Plaintiff further alleged that Defendants retaliated against him by falsely filing a misbehavior reports that subjected him to administrative sanctions[.]").)

It is well established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under [42 U.S.C.] § 1983." Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015) (quoting Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)).

Here, Caban does not allege that he engaged in any protected speech or conduct, or that Defendants took adverse action against him because of that speech or conduct, or that there is any connection between Caban's speech or conduct and any adverse action. Moreover, there is no allegation that Caban was in any way involved in whatever grievances Rogers had filed.  Instead, Caban alleges in conclusory terms that Defendants retaliated against him because he intervened to try to protect Rogers.  (Complaint, p. 9, ¶ 18 (""[Defendants] retaliated on plaintiff for trying to pull inmate Rogers out of harms way.") This does not state a First Amendment retaliation claim.  Accordingly, Caban's third claim must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the second and third claims in Caban's complaint is granted.  Caban, however, is granted 45 days to file an

amended complaint consistent with this Decision and Order.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff is granted leave to file an amended complaint consistent with this decision within 45 days of the entry date of this Decision and Order.

FURTHER, that Plaintiff's failure to file an amended complaint within 45 days of the entry date of this Decision and Order will result in this case proceeding only as to Plaintiff's first claim asserting a violation of the Eight Amendment, as currently alleged.

SO ORDERED.

Dated:         October 26, 2015
               Buffalo, New York


                                        /s/William M. Skretny
                                         WILLIAM M.  SKRETNY
                                        United States District Judge